## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ALBORES, ET AL.                                    CIVIL ACTION


VERSUS                                             NO. 18-6936


DIMITRI, ET AL.                                    SECTION: "H"


## ORDER AND REASONS

Before the Court is Defendants E.M. Dimitri D.O. PMC d/b/a Dimitri Dermatology; American Support Services, LLC; Dermatologic Centers of America, LLC; Mississippi Dermatology, LLC; Mississippi Support Solutions, LLC; Precision Billing Services, LLC; Regional Support Services, LLC; Shapiro Dimitri Medical, LLC; The Dimitri Clinics, LLC; Elizabeth Dimitri, D.O.; Karen Drake; Thomas Orgeron, M.D.; Joel Perdomo, M.D.; and Steven Shapiro, M.D.'s ("Defendants") Motion to Dismiss for Failure to State a Claim (Doc. 76). For the following reasons, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

This *qui tam* action arises out of alleged fraudulent actions by Defendants that took place from January 1, 2016 to September 5, 2024. Elizabeth Dimitri, D.O. is a Doctor of Osteopathy who operates thirteen clinics (the "Clinics") in Louisiana and Mississippi that provide dermatological services. Dr. Dimitri has operated her practice since 2007, and since that time has expanded to multiple locations employing numerous physicians, nurse

practitioners, physician assistants, nurses, administrators, and other health care professionals throughout the Gulf South. Dr. Dimitri and her colleagues treat a variety of skin diseases as well as offer cosmetic procedures to their patients. The Clinics accept Medicare and Medicaid as well as private insurance.

On July 24, 2018, former independent contractors with the Clinics, Jessica Albores, Marie Ford, and Margaret Whiteman ("Relators"), initiated this action, alleging violations of the False Claims Act ("FCA")[1] and Louisiana's Medical Assistance Program Integrity Law ("MAPIL").[2] The United States of America and the State of Louisiana (together with Relators, "Plaintiffs") elected to intervene on September 3, 2024, and filed a Joint Complaint in Intervention (the "Complaint").[3] In their Complaint, Plaintiffs allege that Dr. Dimitri, her Clinics, several billing and administrative support organizations, Dr. Dimitri's office manager, and three other physicians conspired to submit false claims for payment for services that were not medically necessary, namely the provision of phototherapy and photochemotherapy at subtherapeutic doses and intervals, incision and drainage procedures on acne patients, and upcoding for evaluation and management ("E&M") visits.

Now before the Court is Defendants' Joint Motion to Dismiss for Failure to State a Claim. Defendants argue that the Complaint is deficient because it fails to identify the specific role that each Defendant played in the alleged fraudulent scheme, merely lumping the actions of multiple Defendants together. Plaintiffs oppose.[4] The Court held oral argument on Defendants' motion on February 27, 2025.

---

[1] 31 U.S.C. § 3729, *et seq.*
[2] LA. REV. STAT. §§6:438, *et seq.*
[3] Doc. 38.
[4] Doc. 80.

## LEGAL STANDARD

### I.     Motion to Dismiss Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[5] A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the reasonable inference that the defendant is liable for the misconduct alleged."[6] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[7] The Court need not, however, accept as true legal conclusions couched as factual allegations.[8]

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[9] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.[10] Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.[11]

### II.     The False Claims Act and Rule 9(b)

The FCA prohibits, in relevant part, 1) the presentment of a false claim to the Government; 2) the use of a false record or statement to get a false claim paid, and 3) conspiracies to get a false claim paid.[12] Liability for violation includes a liquidated civil penalty and damages.[13] The act is remedial in nature and is "intended to protect the Treasury against the hungry and unscrupulous

---

[5] Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

[6] *Id.*

[7] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

[8] *Iqbal*, 556 U.S. at 667.

[9] *Id.*

[10] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

[11] *Lormand*, 565 F.3d at 255–57.

[12] 31 U.S.C. § 3729 (a).

[13] *Id.*

host that encompasses it on every side."[14] To aid in the rooting out of fraud, the Act provides for civil suits brought by both the Attorney General and by private persons, termed relators, who serve as a "posse of ad hoc deputies to uncover and prosecute frauds against the government."[15] In order to prevail in its contention of violation of § 3729 (a)(1), Plaintiffs must show that Defendants presented (or caused to be presented) a claim to the Government, that the claim was false, and the action was undertaken knowingly.[16]

A complaint filed under the FCA must meet the heightened pleading standard of Rule 9(b) which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[17] Rule 9(b) is an exception to Rule 8(a)'s simplified pleading standard that calls for a "short and plain statement of the claims."[18] Fifth Circuit precedent "interprets Rule 9(b) strictly [when evaluating the pleading of a false claim under the FCA], requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"[19] However, "the time, place, contents, and identity standard is not a straitjacket for Rule 9(b). Rather, the rule is context specific and flexible."[20] Further, if Plaintiffs cannot allege the details of an actually submitted false claim, the Complaint may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong

---

[14] U.S. *ex rel.* Grubbs v. Kanneganti, 565 F.3d 180, 184 (5th Cir. 2009).

[15] *Id.*

[16] 31 U.S.C. § 3729(a)(1).

[17] Fed. R. Civ. P. 9(b); s*ee also* Tel–Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1139 (5th Cir.1992).

[18] *Grubbs*, 565 F.3d at 185.

[19] Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp., 565 F.3d 200, 207 (5th Cir. 2009) (quoting Smallwood v. Pearl Brewing Co., 489 F.2d 579, 605 (5th Cir. 1974)).

[20] *Grubbs*, 565 F.3d at 190.

inference that claims were actually submitted.[21] Additionally, fraud may be pleaded on information and belief when "the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge . . . the complaint must set forth a factual basis for such belief."[22]  "A dismissal for failure to plead fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim under Rule 12(b)(6)."[23]

## LEGAL ANALYSIS

In the instant Motion, Defendants argue that, on the whole, the Complaint is impermissively vague, fails to identify the actions of Defendants with particularity, and fails to state a claim upon which relief can be granted due to its failure to meet the heightened pleading requirements for fraud claims. Plaintiffs oppose, arguing that the Complaint is as detailed as it can be based on the limited information it received from Dr. Dimitri in response to their Civil Investigative Demands ("CIDs") and that, regardless, the 9(b) standard should be relaxed here because that knowledge was located entirely with Dr. Dimitri and the fraudulent scheme was complicated.

Defendants made more particularized arguments for dismissal as related to each individual or entity named in the suit. Plaintiffs opposed each of these arguments. The Court will now consider the pleadings as they relate to each individual or entity in turn.

---

[21] *Id.*
[22] U.S. *ex rel.* Willard v. Humana Health Plan of Tex., Inc., 336 F.3d 375, 385 (5th Cir. 2003).
[23] Southland Sec. Corp. v. Inspire Ins. Solutions Inc., 365 F.3d 353, 361 (5th Cir. 2004) (citing Shushany v. Allwaste, Inc., 992 F.2d 517, 520 (5th Cir. 1993)).

I.    **E.M. Dimitri D.O. PMC d/b/a Dimitri Dermatology; Elizabeth Dimitri, D.O.; and the Dimitri Clinics**

In their Motion, Defendants assert that as written, the Complaint fails to provide notice to Defendants Dimitri or E.M. Dimitri D.O. PMC d/b/a Dimitri Dermatology ("Dimitri Dermatology") of their role in the alleged scheme because the actions of all fourteen Defendants are lumped together as accusations against Dr. Dimitri and her practice. Plaintiffs read Defendants' motion to concede that the Complaint was sufficiently plead as to Dr. Dimitri and Dimitri Dermatology. At oral argument, Defendants conceded that they are not arguing that Plaintiffs have failed to allege a scheme as to Defendants Dimitri and Dimitri Dermatology, but rather that they are used interchangeably by Plaintiffs, making the task of mounting an appropriate defense difficult. Plaintiffs then elaborated that Defendant Dimitri Dermatology is clearly defined in Paragraph 10 of their Complaint and is not used interchangeably with Defendant Dimitri herself.

The Court agrees that the Complaint sufficiently and distinctly alleges claims against Defendants Dimitri and Dimitri Dermatology. For example, Defendant Dimitri is accused of training midlevel providers how to perform and bill medically unnecessary procedures[24], while Defendant Dimitri Dermatology submitted the allegedly false claims regarding photochemotherapy procedures to Louisiana Medicaid.[25] "[W]hen the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge . . . the fraud may be pled on information and belief, provided the plaintiff sets forth the factual basis for [their] belief."[26] While it is certainly alleged that

---

[24] Doc. 38 ¶¶73-76.
[25] Doc. 38 ¶ 89.
[26] U.S. *ex rel.* Thompson v.Columbia/HCA Healthcare, Inc., 125 F.3d 899, 903 (5th. Cir. 1997) *abrogated on other grounds,* U.S. *ex rel.* Eisenstein v. City of New York, New York, 556 U.S. 928, 129 (2009)).

Defendant Dimitri is involved at every stage of this alleged fraudulent scheme, the Court finds that there is adequate distinction between Defendant Dimitri and Defendant Dimitri Dermatology in the Complaint as written, and that 9(b) may be relaxed here because of the concentration of information held exclusively by Defendant Dimitri.

## II.    American Support Services, LLC; Dermatologic Centers of America, LLC; Mississippi Dermatology, LLC; Mississippi Support Solutions, LLC; Precision Billing Services, LLC; Regional Support Services, LLC; Shapiro Dimitri Medical, LLC

In their Motion, Defendants argue that regarding each of the individual entities named as Defendants, the Complaint fails to do more than state that they had contracts with a medical clinic without any mention of wrongdoing as required by the FCA. Plaintiffs respond that because Defendant Dimitri had dominion and control over the named companies, their pleadings were limited to the scant information shared by Defendant Dimitri. In so doing, Plaintiffs argue that a relaxed pleading standard applies when, as here, the knowledge of a particular fraudulent scheme is known by a perpetrator.

Defendant Dimitri was the sole member, manager, and officer of American Support Services, LLC; Dermatologic Centers of America, LLC; Mississippi Dermatology, LLC; Mississippi Support Solutions, LLC; Precision Billing Services, LLC; and Regional Support Services, LLC from 2016 to 2022. As such, the Court finds that Defendant Dimitri exclusively possesses the information that would allow Plaintiffs to plead with the accuracy that Defendants seek regarding these entities' participation in any alleged fraud.[27]

---

[27] *See* Burford v. Cargill, Inc., No. CIV.A. 05-0283, 2011 WL 4382124, at *13 (W.D. La. Sept. 20, 2011) (citing Giuliano v. Everything Yogurt, Inc., 819 F. Supp. 240, 244 (E.D.N.Y. 1993)).

Further, when a complaint alleges "corporate or business fraud, such that Plaintiffs cannot be expected to have knowledge of all the details which undergird the alleged fraudulent scheme . . . some relaxation of Rule 9(b)'s particularity requirement is appropriate in instances where such information is in the [D]efendant's hands or control."[28] Here, while it is not entirely clear from the Complaint what specific role each Defendant entity addressed in this section had in the alleged fraudulent scheme, the Court finds that any lack in the pleadings results from the complexity of the scheme and the interworking of organizations Defendant Dimitri had under her control over the relevant time.[29] As such, the Court finds that the Complaint is sufficiently plead under Rule 9(b) as to Defendants American Support Services, LLC; Dermatologic Centers of America, LLC; Mississippi Dermatology, LLC; Mississippi Support Solutions, LLC; Precision Billing Services, LLC; Regional Support Services, LLC; and Shapiro Dimitri Medical, LLC.[30]

### III.  Individuals Karen Drake; Thomas Orgeron, M.D.; Joel Perdomo, M.D.; and Steven Shapiro, M.D.

If a plaintiff sues more than one defendant for fraud, the plaintiff cannot 'lump together' several defendants and allege generally the defendants' participation in a fraud scheme."[31] Considering the individual named Defendants other than Dr. Dimitri, Defendants argue that the Complaint fails to allege with particularity their role in the alleged fraudulent scheme. Defendants state that the Complaint's assertions that Defendant Drake

---

[28] *Id.* at *12 n.7.

[29] *See U.S. ex rel. Thompson*, 125 F.3d at 193 (5th Cir. 1997).

[30] Defendants Dimitri and Shapiro were both identified as Member/Managers until the company was voluntarily dissolved in 2020. Doc. 38 ¶17. While Dr. Dimitri and Dr. Shapiro may both have information regarding Shapiro Dimitri Medical LLC's operations, the Court finds that because of its status as another organization in this web, the relaxed 9(b) standard applies here.

[31] U.S. *ex rel.* Schiff v. Norman, No. 15-1506, 2018 WL 264253 (M.D. Fla. Jan. 2, 2018).

assisted Dr. Dimitri in intentionally hiring inexperienced medical professionals and staff is not sufficient under Rule 9(b). Plaintiffs oppose, arguing that because of her role as General Manger of E.M. Dimitri, D.O. PMC, Dermatologic Centers of America, LLC, American Support Services, LLC and Precision Billing Services, LLC, and Shapiro Dimitri Medical prior to its dissolution, Defendant Drake's involvement should be viewed in the same manner as Defendant Dimitri in that the knowledge of any wrongdoing is known only to her.

The Court does not agree that Defendant Drake should be afforded the same relaxed pleading standard as applied earlier to Defendant Dimitri, her practice, and the entities of which she was the sole member, manager, and officer. It is unclear what Defendant Drake's role as General Manager entailed or whether she was simply ill-equipped to perform her job, resulting in the hiring of underqualified medical providers which does not amount to having intimate knowledge of a fraudulent scheme, let alone actively participating in it. As such, the Court cannot make the inferential leap that Defendant Drake engaged in the alleged fraudulent activities described in the Complaint without more about her specific allegations.

Considering physician Defendants Drs. Orgeron, Perdomo, and Shapiro, Defendants assert that the Complaint fails to properly plead their commission of false acts beyond a statement that they were relied on by midlevel providers. Plaintiffs respond that the Complaint particularly alleges that the physician Defendants participated in the fraud through the direct administration of unnecessary medical services that they subsequently billed for and the training/guidance of less-experienced mid-level providers. Still, Plaintiffs conceded at oral argument that they did not elucidate specific false claims submitted by the physician Defendants in their Complaint. This, the Court

finds, amounts to insufficient pleading under Rule 9(b) because it cannot discern which provider treated which patient and billed for what medically unnecessary procedure in perpetuation of the alleged fraud.[32]

Accordingly, the Court finds that Plaintiffs have failed to satisfy Rule 9(b) regarding its allegations against Defendants Drake, Orgeron, Perdomo, and Shapiro.

## IV.    Opportunity to Amend

Plaintiffs conclude their Opposition to Defendants' motion with a request for leave to amend their Complaint if the Court finds it wanting under the rigors of Rule 9(b) or 12(b)(6). At oral argument, counsel for Defendants Drake; Drs. Orgeron, Perdomo, Shapiro; and Dermatologic Centers of America, LLC opposed, arguing that Plaintiffs have had enough time to gather the information required to plead their case with enough particularity to survive a motion to dismiss and should therefore not be given the opportunity to amend.

Denial of leave to amend "may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment."[33]  The policy of the federal rules, however, "is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading."[34] "Thus, unless there is a substantial reason to deny leave to amend, the

---

[32] *See* U.S. *ex rel.* Hebert v. Dizney, 295 Fed. Appx. 717, 723 (5th Cir. 2008) (stating that although Rule 9(b) "does not require a qui tam plaintiff alleging a long-running scheme involving many false claims to list every false claim, its dates, and the individuals responsible, the allegedly great extent and complexity of a fraudulent scheme does not excuse a failure to plead at least one false claim with the requisite specificity.")

[33] *See* Rosenblatt v. United Way of Greater Houston, 607 F.3d 413, 419 (5th Cir.2010) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

[34] Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 597-98 (5th Cir. 1981).

discretion of the district court is not broad enough to permit denial."[35] As such, the Court finds that where it has found that the Complaint currently does not survive Rule 9(b), Plaintiffs may amend.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Failure to State a Claim is **GRANTED IN PART** and **DENIED IN PART**.

Plaintiffs' case against Defendants Karen Drake; Thomas Orgeron, M.D.; Joel Perdomo, M.D.; and Steven Shapiro, M.D. is **DISMISSED WITHOUT PREJUDICE** to Plaintiffs' ability to move for leave to amend the Complaint within twenty (20) days of this Order.

New Orleans, Louisiana, on this 20th day of March 2025.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[35] *Id.* (citing Lone Star Motor Import v. Citroen Cars, 288 F.2d 69, 75 (5th Cir. 1961)).